Good morning. Good afternoon. Oh, you're right, it is. When you're having so much fun, time flies. May it please the Court, my name is Mary Jo Shartzis, and I represent the trustee in bankruptcy, A.C. Spicer. I would like to reserve three minutes for rebuttal. This case involves a very wealthy woman, Respondent Sarah Cecconi, who will, if the bankruptcy court's judgment stands, have her cake and eat it too. The issue before this Court is whether a four-and-a-half acre residential estate in Pebble Beach, California, is community property and is therefore subject to the claims of the creditors of her husband, Giuseppe Enzo Cecconi. The bankruptcy court found that it was her separate property, and the bankruptcy court was wrong for several reasons. Let's kind of focus this a little bit from the standpoint, because what we have here is on some things we're going to have to accept credibility findings as far as that goes. And it seems to be undisputed that, is it Cecconi? Am I saying that right? Yes, yes. She was a very wealthy woman before she married him, and so she has this, you know, separate property stream. I guess she's some royalty, or I don't know what her position is, but anyway, so she's some royalty. And they have a rather, you know, we see cases sometimes where people want to claim that something hasn't been transmuted, but it's clearly property that they've all, you know, that they've earned during the marriage. And this woman has money that she had before, and it's clearly established. And they live very unusually, I guess, by most of our standards of marriage, in terms of that they're not together that much, and they kept certain things separate. So the bankruptcy court made certain factual findings that obviously believing her about, I guess, the bankruptcy court believed her that she didn't intend to ever make it community property. And I think we're stuck with that. But there's a transaction where a trust is created that, so your argument would be on that, that the expressed language of that transmuted the nature regardless of what she intended to do? We don't believe transmutation is at issue in this case. Okay. The property, the real estate, the four-and-a-half-acre parcel was always held as community property. All of Mrs. Ciccone's other property, her stocks, her bonds, her bank accounts, everything was always held by her as her separate property. The Pebble Beach property, by contrast, was deliberately held as community property from the moment it was acquired in 1985 and continuously thereafter. It was always held as community property. She transferred her one-half community property interest to her separate property trust that she had. She was very familiar with trusts. She thereafter made a decision to create an express trust to hold the community property of her and her husband. And the major and principal asset of that trust, this is an express trust, was the Pebble Beach home and the furnishings of it. So that is what we contend. We've contended that it's always been community property from the moment that she purchased it. All right. Is it a rebuttable presumption if you hold it in community property? Yes. It's titled as a rebuttable presumption by Claring Convincing Evidence, yes. Okay. And what the bankruptcy judge said is she rebutted that presumption, right? Well, there were two things. His main focus and his decision was that a resulting trust, which is an equitable trust, arose in 1985. And a resulting trust is an equitable trust that arises where there is no intent to convey the beneficial interest, which is shown by the fact that another person paid for the property from their own separate funds or paid for the entire purchase price, and it was in a relationship that would give rise to the presumption of a gift. So there was that. His entire decision was. . . Do you dispute that she paid for this with her separate property? No. Okay. No. She, no, we don't dispute that. But. . . I think the answer is there is a written agreement that they entered into with the advice of counsel. It was prepared for them. They sat in front of the lawyer who explained it to them. They had an opportunity to read it, and they signed it. They signed it so that they would have the benefit of the trust for estate purposes and the community property tax benefits. Her evidence was absolutely clear. Well, and the bankruptcy judge obviously could have gone that way, and then we'd be in a situation where I'd be asking those hard questions of the other side. But even if, okay, if the agreement creates the presumption, she's still allowed to rebut that, right? No. She's not? No. The presumption goes to where one party pays and a resulting trust is created, and that trust is never extinguished. So that just as a matter of law makes it community property, and anything she said and any intent that she had is not admissible? It's not admissible. She signed a written agreement. The basis for the bankruptcy court's decision was that the express trust is the same as the resulting trust, so it didn't matter. It didn't extinguish it. But it's not the same trust. They're totally different things. The only thing that's the same is the trust. So if it were just the resulting trust, then she wins? If under the bankruptcy court's ruling, she wins, because he believed that she. Okay. I mean, we have put this in our papers, and it's not at the top of your list of things that are important, and I realize that it focuses. No, it is important. It focuses on the bankruptcy judge's decisions. There was no evidence whatsoever that at the time she acquired the property in 1985, that she did not intend her husband to have a beneficial interest. She could not remember why she put the property as community property, but she signed a declaration in Monterey Superior Court specifically stating that she placed title to the Pebble Beach property in her and her husband's names as community property as part of her estate plan. Part of her estate plan. And that's what the residential trust was a more formal way of having an estate plan, and the bankruptcy court never, the bankruptcy court, all of her testimony at trial was hindsight on what she. Well, if we look at it your way, if we look at it your way, on what the theory, when could we even consider her interest at that time? As far as the express trust is concerned? Yes. It's like any other written agreement. The terms are clear. There is no ambiguity in it. So then what she thought, you're arguing that she didn't put any evidence in, but it would seem to me that the argument is if it's clear and unambiguous that you wouldn't go to any parole evidence. Correct. So really what you're saying, I mean, when you're saying that what she said is she didn't give a good reason, but if I'm accepting your argument, I don't think we should be looking at what she was saying at that time. Well, that goes to the question of the resulting trust, which is the overriding factor that the bankruptcy court held. He found a resulting trust, and he concluded that it had never been extinguished because the resulting trust was exactly the same as the express trust, and they're on their face clearly not the same. Well, it seems like Starkman might be her best case. How would you distinguish her situation from Starkman? Starkman is the case where it was the trust that there was no specification of the particular property it included. As I recall, Starkman was a trust where there was both separate property and community property that were to be contributed to the trust, and there was no specific agreement that when the husband put his separate property in it, if I got the right case? Yes, Starkman, it was a husband and wife created a replicable trust to simplify their affairs as well as update their estate plan and ensure its efficient operation, and one paragraph of the trust stated that the settlers intended to transfer all their assets to the trust state to the greatest extent possible, and another stated that any property transferred was community property of both them unless such property is identified as separate property of either settler. But nonetheless, after a trial, the court decided that the husband had not transmuted his considerable separate property, and the court of appeal affirmed. None of his property was identified in the trust agreement. The Pebble Beach property is specifically identified in this agreement, and it is specifically declared to be the community property of the settlers. Counsel, Judge Gould, if I could please interject a question. Enzo Ciccone testified in the bankruptcy court as well as Sarah. Yes. He did, right? Yes. You know, usually I've seen these community property, separate property disputes where the husband says one thing and the wife says another. But here as I read this, I thought they both were in agreement. We both agree that the husband had no interest. And am I right? This is a case where on the one hand you've got the husband and wife saying the husband had no interest, and on the other hand you have the literal documents, what the deed said, what the trust said. In this case, their interests are aligned because the bankruptcy trustee is trying to satisfy. My first question is, is that what he said? Not your argument about whether they're aligned, but did he agree with her? Yes. Yes, he did. So it really is him and her on one side of the scale and what the agreements say literally on the other. Right.  Mr. Ciccone and his wife had no discussion about, according to their testimony, about or agreement with respect to the ownership of the Pebble Beach property. But the fact is it always was held as community property. He participated in the planning process. His name was on the application for building permits. His name was on deeds. Well, it seems that your argument's a little bit like the sword and the shield, that in terms of, you know, when it suited your benefits, it was community property, and then when suddenly, you know, we want to take everything from you, then not. And so you can't use it as a sword and a shield. It is or it isn't. That's exactly right. She wanted the tax benefits. That's why she put the property as community property in the first place. She wanted the tax benefits and the benefit of a living trust for estate planning reasons. The only reason for doing community property ownership is the tax benefits upon the death of the spouses. So to say I didn't intend to have this as community property, of course she intended to. Well, the only wrinkle is that the bankruptcy judge believed her. And so the question is. No, I don't believe that. He believed her story. That's true. I mean, it is what it is. You want to reserve your time, and I'll give you two minutes for rebuttal. Yes, thank you. Okay, thank you. Good morning, or good afternoon. Good afternoon. My name is Paul Avila, and I represent Sarah Ciccone, the respondent. May it please the Court. Do you agree that the only reason they put this as part of the community property was for tax reasons? And if not, why? Why did they do it if they didn't intend it? Your Honor, there was testimony that the residential trust was created. Sarah understood there were certain tax advantages of the property being held out. But in order to get the tax advantages, it has to be the real thing. Otherwise, it seems to me it's a scheme to defraud. Except that that's why the Starkman case that Judge Callahan cited is our best case. It may be your best case, but we may not be bound to follow it. That's true. But the reasoning there, I think, is fact. I mean, I'm trying to understand the logic of this. They were only entitled to tax benefits if they genuinely intended to have the community property, not some piece of paper or name only. So they create an express trust for the purpose of taking advantage of the tax benefits that accrue to putting money in community property. And then they say, well, it doesn't matter. That was just for tax purposes. I mean, it just seems to me that you should be stuck. You can't engage in a scheme to defraud essentially the state of California and possibly the United States government by creating a fictional community property agreement. And then when he goes bankrupt, say, oh, no, we never intended this. I just don't understand that argument. Quite frankly, I find it, speaking myself, just totally unsympathetic. Your Honor, it may be that Sarah would not have been entitled to the tax benefit of the community property status for this property, but that really isn't relevant to the analysis. And if and when the time came, if there was a death that gave rise to it, she would have been testifying just the opposite, wouldn't she? I don't believe so. No? She would have said I didn't really intend this to be community property? She would have given up the tax benefits? Your Honor, she relied on whatever the effect of the trust agreement was. But if I could address your question. The one point why that confirms why this property was not community property is the transmutation issue that the other party likes to avoid. And this did arise in the Starkman case. And transmutation analysis doesn't involve whether one of the parties intended to get a tax benefit or not. It's a strict bright-line test in California under the McDonald case. And if I could step back just one second. How do you deal with the Bales case, which said that it would create a creature rather of equity and as a resulting use of the law, and it cannot therefore arise where there is an expressed trust declared by the parties and evidenced by a written declaration of an expressed trust? Wasn't that exactly what the residential trust was? It was. But what Baxter does not address is the situation where you have an existing resulting trust, and then what is the effect, if any, of an expressed trust that is entered into much later? And this is where the analysis of the bankruptcy court I think is right on. And I don't think it's disputed that the circumstances around the purchase of the property and what the parties did with that property and how they behaved and what their intent was from the date of the acquisition all the way up to the time of the resulting trust, that established a resulting trust, I'm sorry, up to the time of the residential trust. For that whole period until 1998, the residential trust, it's undisputed in the bankruptcy court found overwhelming evidence that the intent was for Sarah to maintain a sole beneficial interest. So now we get to the point where the residential trust, the expressed trust, is entered into. And the question is, what is the effect of that? And you're right. Well, you know, if they were getting divorced, I'm sure that Enso would be saying it was community property, and she would be saying, she would be tracing the assets just like she was before and saying, no, it's mine. And, you know, so, but then I guess the benefit for tax purposes, if she's dead, what does she care? But if, except for if she wants to take care of her husband and not have him, you know, have to pay, you know, lose the house. But as long as she's alive, she's probably always going to say it's hers. So you've got all of this, but. I really don't believe so. And I think there was extensive testimony, and the judge believed these parties about what their actual intent was. And I think the judge correctly analyzed the residential trust under the transmutation analysis, which he's required to do. If we assume that the property was separate before then, we have to say, what was the, what's the effect of this express trust? And that's something that Bales v. Farris. Can parole evidence come in about the express trust? Yes, it can. That trust is not an integrated document. There's no integration clause. There's nothing that precludes the judge from looking at the circumstances surrounding what the parties intended. The Court in Stock didn't say that in deciding whether a transmutation has occurred, we interpret the written instrument independently without resort to extrinsic evidence? Well, for the transmutation issue, yes, correct. I mean, that's what McDonald, the California Supreme Court, has told us we have to follow. It's a bright line test, and to look for that specific language indicating an intent to change the ownership character of the property. So if the express trust changed it, then what she thought she was doing doesn't matter? If the express trust contained, yes, the kind of language that McDonald lays out as the test for a transmutation, you know, assuming it was separate property before that and asking did it now transmute into community property, if that trust agreement, for example, said this property has been Sarah's sole and separate property and it is now going to be community property. Well, okay, then let's just assume that you get to get into parole evidence. That was your co-counsel, not co-counsel, your counsel for the appellant said that Sarah didn't present clear and convincing evidence because she couldn't even remember about what was going on. So how do you respond to that? Well, what I've heard from the very beginning of this case is this argument, that there was no agreement that Enzo hold title beneficially for Sarah because there was no testimony that the parties had such an agreement at the beginning. And resulting trust law doesn't require that there be this expressed understanding. It's based on the facts, the purchase of the property by one party and an intent not to benefit the other. It's not based on an oral understanding of the trust relationship. Right. Obviously, the bankruptcy judge made credibility rulings in your favor. So how far did they take you? Your Honor, they take us all the way, and this is why. It's because of Evidence Code 662, for example, and the fact that title is a presumption of ownership which can be overcome. And here, the evidence was found by the highest standard possible, clear and convincing evidence, of an intent to retain beneficial interest of this property despite how title was reflected. And, you know, when you back all these arguments can boil down to that very point, which Sarah proved overwhelmingly, despite the community property deed that was residential trust and whatever impact it may have had, despite all that stuff, she proved by clear and convincing evidence, uncontradicted, corroborated by Enzo, to maintain sole beneficial interest in the property. If I could ask you a question, she, from time to time, lived in that house, right? In the summers or some part of the year? She went to Venice in the summer, I think. Oh. Then in the winter, I guess. Yes. Part of the year she lived in the house. That's correct. Did Enzo ever hang out at that house? Is there evidence in the record as to whether Enzo used the house? After Enzo's business failed in London, he would then travel with Sarah back and forth. So when she was in Venice, he was with her. And when she was in California, he was here with her then. So how long was she living there before he started? The business failed, excuse me, I think in 1990 or 1991. And the house was completed sometime before that, I think in the mid-80s. I think that's right. Okay, thank you. But to finish up with the court's question, I think that credibility determination about intent does solve the whole case. And I think the transmutation issue also, even when you analyze the residential trust, I think it's pretty hard to argue that the property was not separate before that. And that independent of intent, you then have to ask yourself, was this property transmuted into community property at that point? And the test is set out by McDonald. And it doesn't matter whether the parties intended that to be for tax benefit or what the intent was. And Starkman says that, you know, right at the end of the decision. Because that issue was raised and they said, we're not concerned about what the impact of this might be on her tax position. The question before us is whether under McDonald the property was transmuted and it was not. And it was not transmuted here. If the court doesn't have any further questions for me. There don't appear to be additional questions. Thank you. I will submit. All right, I'll give you two minutes, counsel. Thank you. Every resulting trust case, even though you don't have to have a separate agreement that I'll convey it back, there is always some situation that has given rise not just the money that was paid. There's been something added, some condition. If you look at Jones v. Kelly, Sokol v. King, all of these cases have some other reason, a reason why property was taken in one person's name rather than the person who paid for it. So you can't conclude that a resulting trust was created when she deliberately took title of the property and left it that way for 16 years, then made an express trust, and then say, oh, it was really separate property, so the transmutation rules apply. The transmutation rules don't apply. The property was community property when it went into the trust. It has remained community property ever since. It is community property to this very day. So the express trust was what year? 1998. Okay. And the resulting trust was? 1985. Okay. And so, just so I'm clear on, the resulting trust, if we were talking about only the resulting trust, if there had not been the express trust after that, would we have to affirm with the credibility findings here? I would hope not, because the evidence, I believe that we have tried to demonstrate, does not support even a resulting trust, because she cannot prove, did not prove, has no evidence to prove that her intent at the time, 1985, when she acquired that property, there is no evidence of her intent at that time. All of the evidence is her trial testimony that is hindsight after a creditor filed a lawsuit against her in Monterey County Superior Court in 2001. Up until that time, there was never, every act of hers was consistent with community property ownership. Even then, if I understand it correctly, she couldn't explain why they created the community property trust in 1985. The community property grantees or whatever. She could not remember why she did it or who did it. And, you know, she said in one place, the bankruptcy judge found her credible. But she couldn't, well, I don't know. But the facts are the facts. She couldn't believe it, but we still have, she didn't remember why. She couldn't explain it. Exactly. That's what he found credible. But it's still significant that she couldn't explain it. But she couldn't explain it. In every resulting trust case, there is always a reason that property was taken in the name of another. And the only reason here, in her own words, is the estate planning benefit and the tax benefits. That's why she wanted it to be community property. And it is our position that she has to bear the burden of community property if she wants to get the benefits. In other words, I mean, I would put this as that she should be stopped from denying the community property, denying that it was community property because she put it in there to get tax benefits, which she couldn't have gotten unless it was a sincere intent that it be community property. And now she can't, having created an express trust and recorded it, she should be stopped from denying it. I agree with you entirely. And I hope that that is what the Court finds. Well, I don't know if there's any authority for an estoppel, but that's what sort of strikes me as. All right. That'll conclude argument. The Court will, this matter will be submitted, and we're in, the Court will be in reset still tomorrow. Thank you very much. Thank you. Thank you.
judges: Korman, Gould, Callahan